R. Willis Orton (2484)
KIRTON & McCONKIE
60 East South Temple, Suite 1800
P.O. Box 45120
Salt Lake City, Utah 84145-0120
Telephone: (801) 328-3600
Facsimile: (801) 321-4893

Attorneys for Intellectual Reserve, Inc.
 and Richard G. Scott

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| ELEUTIAN TECHNOLOGY, LLC, a Wyoming limited liability company,<br><br>    Plaintiff,<br><br>vs.<br><br>GLOBAL EDUCATION TECHNOLOGIES, LLC, a Georgia limited liability company, formerly known as CITO-LT, a Georgia limited liability company; STEVE BRANDAU; LARRY HOWICK; JANIS KOH; and John Does 1-5<br><br>    Defendants. | **MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENA AND MOTION FOR A PROTECTIVE ORDER**<br><br>Case No. 2:08-mc-331-TC<br><br>Judge Tena Campbell<br><br>Magistrate Judge Brooke C. Wells |
| GLOBAL EDUCATION TECHNOLOGIES, LLC, a Georgia limited liability company,<br><br>    Counterclaimant,<br><br>vs.<br><br>ELEUTIAN TECHNOLOGY, LLC, a Wyoming limited liability company,<br><br>    Counterclaim Defendant. | |

In support of their Motion to Quash Subpoena and Motion for a Protective Order, Intellectual Reserve, Inc., and Elder Richard G. Scott, ("Elder Scott"), through their counsel, submits the following memorandum:

## RULE 26(c) CERTIFICATION

Elder Scott's counsel, R. Willis Orton, conferred with Drake D. Hill, counsel for Eleutian Technology, LLC ("Eleutian"), and stated Elder Scott's concerns with Eleutian's proposed deposition and suggested two alternative methods for Eleutian to obtain the information it seeks. *See* Orton letter dated May 14, 2008, Exhibit "A" hereto. The first method was for Eleutian to take the deposition of Richard Heaton, who is believed to possess the information sought by Eleutian. *See id.* The second was for Elder Scott's counsel to assist Eleutian in identifying the appropriate individual(s) who possess the information Eleutian seeks. *See id.* Unfortunately, Eleutian's counsel rejected Mr. Orton's proposals, thus necessitating this motion.

## Factual Background

1. Eleutian filed a civil action in the United States District Court for the District of Wyoming, bearing the caption noted above, on August 17, 2007 (hereinafter the "Wyoming Action.")

2. The Wyoming Action involves claims between the parties there concerning certain contractual rights to utilize and market a technology developed by The Church of Jesus Christ of Latter-day Saints (the "Church") and held by Intellectual Reserve, Inc. ("IRI"), a non-profit corporation which holds the Church's intellectual property. Elder Scott is not a party to the Wyoming Action.

3. In the Wyoming Action, Eleutian claims that it holds the right to market an English Certification Test ("ECT") to Korean citizens. *See* Eleutian's Complaint in the

Wyoming Action, Exhibit "B" hereto. Eleutian claims that its marketing rights stem from a licensing contract with Brigham Young University- Hawaii ("BYU-H"). *See* Exhibit "B," ¶¶ 2, 13.

    4.    In its Complaint, Eleutian claims that the defendants have "continuously attempted to interfere with Eleutian's contracts with its customers." *See id.* ¶ 5. According to Eleutian, defendants also claim ownership of certain marketing rights to the ECT in Korea. *See id.* ¶ 16. As is evident by Eleutian's Complaint, Eleutian and the defendants are in dispute as to who has rights to market the ECT in certain areas in Korea. *See id.* ¶¶ 16-17.

    5.    In the Wyoming Action, Eleutian advances claims against the defendants for (a) tortious interference with contract and prospective business advantage, (b) civil conspiracy, (c) fraud, and (d) intentional misrepresentation. *See id.* ¶¶ 18-26.

    6.    On May 13, 2008, Elder Scott's counsel accepted service of a subpoena which purports to command Elder Scott's attendance at a deposition unilaterally scheduled by Eleutian on May 21, 2008. *See* copy of Subpoena in a Civil Case, attached as Exhibit "A" to Elder Scott's Affidavit (hereinafter the "Subpoena"). The Subpoena does not list a specific hour at which the deposition is to begin, does not list the deposition's anticipated duration, and does not list the subject matter of the deposition. *See* Scott Aff., Exhibit "A." Elder Scott can only assume that Eleutian seeks his deposition with respect to the claims raised in Eleutian's Complaint relative to the ECT.

    7.    The ECT is a small component of a program referred to as Technology Assisted Language Learning ("TALL"). *See* Scott Aff. ¶ 10. TALL was invented by Church employees at the Missionary Training Center in Provo, Utah and Brigham Young University ("BYU"). *Id.*

8. In 2005, BYU-H marketed TALL into the public domain. *See id.* ¶ 11. Elder Scott did not oversee, participate in, or have any involvement with, BYU-H's marketing or licensing of TALL, or any component thereof, to any party. *See id.* To that end, until recently, Elder Scott was not aware that BYU-H had licensed the ECT component of TALL. *Id.* at 13. Until May 14, 2008, Elder Scott does not recall knowing that the ECT had a presence in Korea, nor does he recall knowing that any entity held licensing rights to TALL or to the ECT in Korea. *Id.* at 15.

9. Elder Scott has no knowledge of the Wyoming Action, and until served with the Subpoena, Elder Scott does not recall ever before hearing the name Eleutian. *See* Scott Aff. ¶ 9.

10. Elder Scott does not possess any knowledge relevant to the claims advanced by Eleutian in the Wyoming Action. *See id.* ¶ 16. This is because Elder Scott was not involved with, nor did he have any knowledge of, BYU-H's licensing of the ECT to Eleutian or to any other party. *Id.* ¶ 14. In fact, Elder Scott has never before discussed the Eleutian licensing agreement nor has he ever taken part in any discussions regarding the licensure of the ECT to any party working with BYU-H. *See id.*

11. Elder Scott is a member of the Church's Quorum of Twelve Apostles (the "Quorum"). *See* Scott Aff. ¶ 1. As a member of the Quorum, Elder Scott shares administrative and ecclesiastical responsibilities over a worldwide church with over 13 million members, and thousands of organizational units. *See id.* ¶¶ 4-7. On a regular basis, Elder Scott travels throughout the world to "teach, train, and call Church volunteer leaders and to organize the Church's administration." *See id.* ¶ 7.

12. Eleutian's counsel never contacted Elder Scott prior to scheduling his deposition. *See id.* ¶ 17. Quite aside from his lack of knowledge concerning any matter relevant to

iv

Eleutian's claims, as a practical matter, Elder Scott is not available to attend the deposition on the scheduled date due to previously scheduled appointments. *See id.* ¶ 17. Moreover, even if he was available, as a consequence of his busy schedule, Elder Scott would not have time to adequately prepare himself. *See id.*

13. To appear for a deposition, the time and duration of which Eleutian has not provided, would substantially disrupt Elder Scott's pre-existing schedule, and would require him to cancel meetings and commitments planned months in advance. *Id.* at 18. It would further impose a substantial burden on his already busy schedule and would substantially interfere with his ministry and ecclesiastical responsibilities as a member of the Quorum and with his administrative responsibilities. *Id.*

14. As noted above, Eleutian filed its Complaint in Wyoming on August 17, 2007. *See* Exhibit "B." Discovery cutoff in the Wyoming Action is scheduled for June 2, 2008. *See* Stipulated Scheduling Order in the Wyoming Action, Exhibit "C" hereto. After pursuing its claims for nearly one year, now, at the eleventh hour, Eleutian seeks to depose Elder Scott, with only eight days advanced notice. *See* Scott Aff., Exhibit "A."

15. Counsel for Elder Scott made a good faith effort to accommodate Eleutian by recommending that Eleutian take the deposition of Richard Heaton, an individual who is believed to possess knowledge relevant to the claims asserted by Eleutian. *See* Exhibit "A." In the event that Richard Heaton's deposition does not provide Eleutian with the information it seeks, Elder Scott's counsel further offered to assist Eleutian in identifying the appropriate individual who may possess the knowledge that Eleutian desires. *See id.* Unfortunately, Eleutian rejected both suggestions.

## ARGUMENT

I. **ELDER SCOTT'S SUBPOENA SHOULD BE QUASHED, OR A PROTECTIVE ORDER ISSUED WHICH PROHIBITS THE DEPOSITION, BECAUSE ELDER SCOTT'S DEPOSITION IS UNNECESSARY, UNWARRANTED, AND UNDUELY BURDENSOME.**

Eleutian seeks to depose Elder Scott, a non-party to the Wyoming Action, even though Elder Scott possesses no knowledge relevant to any of Eleutian's claims. *See* Scott Aff. ¶¶ 12-16. Furthermore, even if Elder Scott did possess relevant information, any such information is not unique to Elder Scott and can be discovered from other individuals for whom a deposition will not pose an undue burden.

A. **Elder Scott Does Not Possess Any Information Relevant to Any of Eleutian's Claims.**

The United States Court of Appeals for the Tenth Circuit has held that "the trial court [has] broad discretion as to the control of discovery, ... and rulings will not be set aside short of an abuse of discretion." *Marsee v. U.S. Tobacco, Co.*, 866 F.2d 319, 326 (10th Cir. 1989) (internal citations omitted). "In particular, rulings on the relevancy of materials sought for discovery are within the trial court's discretion." *Id.* (internal citations omitted), *see also* FED. R. CIV. P. 26(b)(1) (limiting discovery to matters relevant to a party's claim or defense).

When discovery is sought from a non-party, "[m]ore is required 'than a theoretical argument that the requested information somehow relates'" or might relate to a claim or defense. *Allen v. Leibinger*, 190 F.R.D 518, 522 (W.D. Tenn. 1999) (internal citation omitted). "Discovery may be denied 'where, in the court's judgment, the inquiry lies in a speculative area.'" *Id.*

Elder Scott does not have knowledge relevant to any of Eleutian's claims in the Wyoming Action. Any information that Eleutian hopes to glean from Elder Scott's deposition is,

1

therefore, speculative. For instance, all of Eleutian's claims stem from competing interests in licensing rights to the ECT in Korea. *See* Exhibit B, ¶¶ 3, 15-16. Eleutian's right to use and market the ECT arises from a contractual relationship between it and BYU-H. *See id.* ¶ 2. The defendants named in Eleutian's Complaint apparently also have rights to use and market the ECT in Korea pursuant to similar arrangements with BYU-H. *See id.* ¶¶ 3, 15-16. Elder Scott did not oversee, was not involved in, or did not participate in BYU-H's licensing of the ECT to Eleutian or to any party. *See* Scott Aff ¶¶ 12. 14. Until recently, Elder Scott did not recall that any party held licensing rights to the ECT in Korea. *See id.* ¶ 15.

Elder Scott, therefore, does not possess any information relevant to any of Eleutian's claims. As set forth above, this is because Elder Scott was not involved in any of the licensing activities of others that Eleutian claims may have damaged it. *See* Scott Aff ¶¶ 12-16. Rather, Eleutian's endeavor to depose Elder Scott, a non-party, amounts to nothing more than, at best, an improper fishing expedition, and, at worst, an attempt to harass and annoy, neither of which the Federal Rules allow. *See* FED. R. CIV P. 26(b)(1) (information sought in discovery must be "reasonably calculated to lead to the discovery of admissible evidence.") and 26(c). The discovery Rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim. *See id.* That discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request. *See id.* Because Elder Scott does not possess any information relevant to Eleutian's claims, this Court should grant Elder Scott's motion to quash and/or for a protective order and prohibit his deposition from being taken.[1]

---

[1] The Tenth Circuit and other Circuits have prohibited this abuse of the discovery process on numerous occasions. *See Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1169 (10th Cir. 2000) (not error to prohibit further discovery when the "likely benefit of any further attempted fishing expedition would be negligible"); *Koch v. Koch Indus. Inc.*, 203 F.3d 1202, 1238 (10th Cir. 2000) ("Utilizing its discretionary power … the district court (cont.)

2

### B.  Eleutian Must Exhaust All Less Intrusive Means Before Deposing Elder Scott.

Rule 26(c) of the Federal Rules of Civil Procedure provides that "on matters relating to a deposition," the court in the district where the deposition is to be taken may make any order which justice requires in order to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense." FED R. CIV. P. 26(c). Additionally, Rule 26(b)(2)(C) requires that the "extent of discovery otherwise allowed" shall be limited by the court if "the discovery sought is ... obtainable from some other source that is more convenient, less burdensome, or less expensive." FED R. CIV. P. 26(b)(2).

A growing number of federal courts, including the Tenth Circuit, have applied the principles set forth in Rule 26 to prevent high-ranking officials in corporations and organizations from being unnecessarily deposed when the Plaintiff has failed to demonstrate that the targeted official possess, direct, personal knowledge of the case or that the information sought cannot be obtained from a more convenient source.

For example, in *Thomas v. IBM*, 48 F.3d 478, 482-484 (10th Cir. 1995), the Tenth Circuit held that the district court properly entered a protective order preventing IBM's chairman of the board from being deposed when, among other things, nothing in the record indicated that IBM did not make lower level officials, such as supervisors, available for deposition, and the plaintiff, like Eleutian in this case, "made no attempt to demonstrate that the information [sought] could

---

appropriately recognized that the likely benefit of this attempted fishing expedition was speculative at best."); *Equal Emp. Opportunity Comms'n v. University of New Mexico*, 504 F.2d 1296, 1302 (10th Cir. 1974) (stating that it is inappropriate to use discovery for "fishing expeditions"); *MacKnight v. Leonard Morse Hosp.*, 828 F.2d 48 (1st Cir. 1987) (holding that "the court did not err ... in refusing to subject [nonparties] to a fishing expedition").

not be gathered from other ... personnel, for whom a deposition might have been less burdensome." *Id.* at 483.[2]

The standard that Eleutian must meet before deposing a high-ranking official, such as Elder Scott, was summarized in *Liberty Mut. Ins. Co. v. Superior Court*, 13 Cal. Rptr. 2d 363 (Cal. Ct. App. 1992), where, after reviewing federal cases, the California Court of Appeals held:

> Consistent with these federal decisions, ... when a plaintiff seeks to depose a corporate president or other official at the highest level of corporate management, and that official moves for a protective order to prohibit the deposition, the trial court should first determine whether the plaintiff has shown good cause that the official has unique or superior personal knowledge of the discoverable information. If not, as will presumably often be the case in the instance of a large national or international corporation, the trial court should issue the protective order and first require the plaintiff to obtain the necessary discovery through less-intrusive methods.... Should these avenues be exhausted, and the plaintiff make a colorable showing of good cause that the high-level official possesses necessary information to the case, the trial court may then lift the protective order and allow the deposition to proceed.

*Id.* at 367.[3]

Elder Scott, as a member of the Quorum, is one of the highest ranking officials in the Church. Eleutian cannot demonstrate that Elder Scott possesses direct, personal and superior or

---

[2] *See also e.g. Evans v. Allstate Ins. Co.*, 216 F.R.D. 515, 518-19 (N.D. Ok. 2003) (granting a protective order to prevent the depositions of Allstate's CEO and CFO because the CEO and CFO had no personal knowledge relative to any of the facts of the case); *Elves Presley Enters. v. Elvisly Yours, Inc.*, 936 F.2d 886 (6th Cir. 1991) (upholding district court's order denying the deposition of Elvis Presely's widow in a copyright infringement case; *Lewelling v. Farmers Ins. Of Columbus, Inc.*, 879 F.2d 212, 218 (6th Cir. 1989) (affirming district court's protective order preventing the deposition of the CEO of an insurance company and awarding sanctions where the notice of deposition was issued to obtain settlement leverage); *Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979) (affirming district court's protective order requiring the plaintiff to depose other Upjohn representatives that Upjohn indicated had more knowledge of the facts before deposing Upjohn's president); *Baine v. General Motors Corp.*, 141 F.R.D. 332, 334-36 (M.D. Ala 1991) (vacating notice of depositions to GM's vice president when plaintiff failed to establish that the information sought could not be obtained for another GM representative, when a 30(b)(6) deposition had not yet been taken, and plaintiff failed to demonstrate that GM's vice president had special knowledge of the case).
[3] A recent decision in *Reif v. CNA*, 2008 WL 2008 (E.D. PA, Feb. 21, 2008) affirms this analysis, a copy of which is Exhibit "D" hereto. In *Reif*, the Court denied the plaintiff's motion to compel the deposition of CNA's chief executive officer. *Id.* The court reasoned that plaintiff "must show the information cannot 'be gathered from other [CNA Financial] personnel.'" *See id.* (citing *Thomas v. IBM*, 48 F.3d 478, 482-484 (10th Cir. 1995)). The Court went on to reason that "under these circumstances, the burden and expense of [the CEO's] deposition 'outweighs its likely benefit....'" *Id.* (citing FED R. CIV. P. 26(b)(2).

unique knowledge of the case and that the information sought cannot be obtained from a more convenient source. First, as demonstrated in Elder Scott's affidavit, he does not possess any information relevant to any of Eleutian's claims. *See* Scott Aff. ¶¶ 12-16. Second, Elder Scott's counsel identified Richard Heaton as an individual who may possess the information Eleutian seeks. *See* Exhibit "A." Furthermore, if Richard Heaton does not provide Eleutian with the information it requires, Elder Scott's counsel offered to assist Eleutian in identifying the appropriate individual who does possess personal knowledge of the information Eleutian seeks. *See id.* Eleutian rejected both proposals.[4]

Consequently, until Eleutian has undertaken to elicit testimony from Richard Heaton and others with personal knowledge of its claims, Eleutian cannot demonstrate that other, less burdensome, avenues of discovery have been exhausted, which, under Tenth Circuit precedent, is the minimum mandatory prerequisite that Eleutian must satisfy before the deposition of Elder Scott can even be considered. *See Thomas*, 48 F.3d at 482-484. Therefore, this Court should either quash the Subpoena or issue a protective order ordering that the deposition of Elder Scott not be had until Eleutian shows that the information it seeks from Elder Scott, if relevant, cannot be discovered from other sources.

### C. Elder Scott's Deposition is Unduly Burdensome

Rule 45(c)(3)(A)(iv), FED R. CIV. P., requires the Court to quash a subpoena that subjects a person to undue burden. Elder Scott is extremely busy. Under the direction of the Church's First Presidency, Elder Scott, as a member of the Quorum, manages the affairs of a 13-million member worldwide church with thousands of properties, officers, and sub-units. *See* Scott Aff.

---

[4] Rule 30(b)(6), Fed R. Civ. P., provides Eleutian with another mechanism to discover the information it seeks. Under this Rule, Eleutian should name IRI as the deponent, describe with particularity the matters for examination, and the Church would then designate someone(s) to testify on its behalf. FED. R. CIV. P. 30(b)(6). And Eleutian has done exactly that, having also subpoenaed IRI; however, Eleutian wants more than that and seeks to depose Elder Scott, one of the highest ranking officials in the Church.

¶¶ 4-7. Elder Scott spends a substantial portion of his time traveling throughout the world to "teach, train, and call Church volunteer leaders and to organize the Church's administration." *See id.* ¶ 7.

Eleutian's counsel did not contact Elder Scott regarding the proposed deposition. *Id.* ¶ 17. Instead, with discovery cut-off rapidly approaching, Eleutian's counsel simply served the Subpoena on Elder Scott's counsel expecting that Elder Scott will be available for a deposition less than eight full days later. *See* Exhibit "C," ¶ 2. Eleutian's eleventh hour attempt to depose Elder Scott should not go unnoticed.

Aside from Elder Scott's complete lack of relevant information with respect to Eleutian's claims and the fact there are others within IRI who may be able to provide the information Eleutian seeks, as a practical matter, Elder Scott is not available to attend the scheduled deposition due to previously scheduled appointments. *Id.* ¶ 17. Furthermore, even if he was available, Elder Scott would not have sufficient time to adequately prepare himself. *Id.* Requiring Elder Scott to appear for a deposition, the specific time and duration of which Eleutian failed to announce, in an action to which he is not a party is, under the circumstances, excessively burdensome. Indeed, Elder Scott has testified that appearing for the deposition will impose a substantial burden on his pre-existing schedule, and would substantially interfere with his ministry and ecclesiastical responsibilities. *Id.* ¶ 18.

## CONCLUSION

Therefore, based on the foregoing, this Court should quash the Subpoena and/or enter a protective order that the deposition of Elder Scott not be had.

DATED this 20th day of May, 2008.

                                                KIRTON & McCONKIE

                                                By /s/ R. Willis Orton
                                                  R. Willis Orton
                                                  Attorneys for Intellectual Reserve, Inc. and
                                                  Richard G. Scott

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of May, 2008, I caused to be delivered a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENA AND MOTION FOR A PROTECTIVE ORDER** via first class mail, postage prepaid, and by email, to the below-named persons:

Drake D. Hill
Mistee L. Godwin
Orintha Karns
BROWN, DREW & MASSEY, LLP
159 North Wolcott, Suite 200
Casper, Wyoming 82001
ddhill@browndrew.com

Brian J. Holiday
Eleutian Technology
215 2nd Street
Ten Sleep, Wyoming 82442
brian@eleutian.com

Henry F. Bailey, Jr.
Jared Scott Crecelius
221 East 21st Street
P.O. Box 1557
Cheyenne, Wyoming 82003-1557
hfb@baileystockharmon.com

William W. Maycock
SMITH GAMBRELL & RUSSELL
Suite 3100 Promenade II
1230 Peachtree Street NE
Atlanta, Georgia 30309-3592
bmaycock@sgrlaw.com

/s/ Londa Frankis

1059168